UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| BJ'S MANICURED LAWN SERVICES, LLC §<br>   Plaintiff, §<br>§<br>vs. §<br>§<br>S.A. LONE STAR TRUCK & §<br>EQUIPMENT, INC. dba §<br>LONE STAR TRUCK & EQUIPMENT, §<br>and §<br>MERCEDES-BENZ FINANCIAL §<br>SERVICES USA, LLC §<br>   Defendants §| CASE NO.  5:19-cv-1224<br><br>JURY DEMAND |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW BJ's Manicured Lawn Services, LLC (hereinafter "BJ's"), complaining of and against Defendants, S.A. Lone Star Truck & Equipment, Inc., d.b.a. Lone Star Truck & Equipment (hereinafter "Lone Star"), and Mercedes-Benz Financial Services USA, LLC (hereinafter "MBFS"), and for cause of action would respectfully state the following:

### I. INTRODUCTION

1.  This is an action for damages brought by Plaintiff alleging that Defendants violated the Motor Vehicle Information and Cost Saving Act, 49 U.S.C. § 32701 *et. seq*. (hereinafter the "Federal Odometer Act").

2.  Plaintiff's claims are based on Defendants' material fraudulent representations and Defendants' intent to defraud Plaintiff by selling a 2014 Mitsubishi truck that Defendants knew or should have known had more mileage than was displayed on the vehicle's odometer.

## II. JURISDICTION AND VENUE

3. Jurisdiction of this Court arises under 49 U.S.C. § 32710(b), 28 U.S.C. §§ 1331 and 1337. Venue in this district is proper in that the Defendants transact business here and/or the conduct complained of occurred in Bexar County, San Antonio, Texas.

## III. PARTIES

4. Plaintiff, BJ's Manicured Lawn Services, LLC is a foreign limited liability company with its company headquarters located at 92 Hansbury Avenue, Newark, New Jersey 07112. Mr. Bradford James is the only member of BJ's, and at all times relevant to this matter Mr. James has acted on behalf of Plaintiff BJ's Manicured Lawn Services, LLC as its authorized agent.

5. Defendant, S.A. Lone Star Truck & Equipment, Inc., d.b.a. Lone Star Truck & Equipment, is a Texas corporation doing business at 5919 Bicentennial, San Antonio, Texas 78219. Defendant may be served by and through its registered agent, Kraig Hime, at the business address of 5919 Bicentennial, San Antonio, Texas 78219.

6. Defendant, Mercedes-Benz Financial Services USA, LLC, is a Delaware limited liability company conducting business in the State of Texas. Defendant may be served through its registered agent in the State of Texas, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

7. At all times material hereto, BJ's was a "transferee" as said term is defined at 49 C.F.R. § 580.30.

8.     At all times material, Defendants were "dealer[s]" as said term is defined at 49 C.F.R. § 580.30, and "transferor[s]" as said term is defined at 49 U.S.C. § 32702(2), and "distributor[s]" as said term is defined at 49 U.S.C. § 32702(3).

## IV.  FACTUAL ALLEGATIONS

9.     During the spring of 2019, Mr. James was in the market for a vehicle for BJ's and began searching on the internet for vehicles throughout the country.

10.    Mr. James became interested in a vehicle listed for sale by Defendants on the internet. Defendants listed a 2014 Mitsubishi FUSO FE160CC with a VIN of JL6BPH1A2EK003348 with a declared odometer reading of 47,525 (hereinafter the "Vehicle").

### *Defendants Knowingly Purchased The Defective Vehicle*

11.    Unbeknownst to Plaintiff, just eleven months before Defendant Lone Star sold the Vehicle to Plaintiff, Defendant Lone Star had purchased the Vehicle from MBFS.

12.    A State of Florida title certificate issued on June 21, 2018 listed MBFS as the Vehicle's registered owner. The "Odometer Status" discloses "146,155 MILES 04/19/2018 ACTUAL."

13.    The transfer of title on the face of the very same State of Florida title certificate lists that MBFS sold the Vehicle to Lone Star on 06/21/18. The odometer disclosure states,

"I/We state that this   5 or   6 digit odometer now read 47119.x (no tenths) miles, date read 6/21/18 and I hereby certify that to the best of my knowledge the odometer reading: ✘ 1. reflects ACTUAL MILEAGE.     2. is IS IN EXCESS OF ITS MECHANICAL LIMITS    3. is NOT THE ACTUAL MILEAGE. **UNDER PENALTIES OF PERJURY, I DECLARE THAT I HAVE READ THE**

**FOREGOING DOCUMENT AND THAT THE FACTS STATED IN IT ARE TRUE."** (Emphasis in original.)

14. Specifically, in the space provided where "Seller Must Enter Purchaser's Name," the name of Defendant "Lone Start Truck & Equipme" *(sic)* was entered in blue ink. In the area where the title form indicates, "SELLER Must Sign Here:" and "Print Here:" the blue ink signature and printed name of "Jason Lao" as agent for Defendant MBFS appears. The address, date, odometer disclosure of 47,119 miles and the "x" to indicate actual miles are all completed in a uniquely different black ink than the blue ink used in the seller's signature.

15. On the odometer disclosure, neither the five-digit box nor the six-digit box option was chosen. In addition, the space allotted for "Seller Must Enter Selling Price" was left blank. The spaces indicating, "PURCHASER Must Sign Here:" and "Print Here:" were left blank.

16. In other words, the odometer disclosure statement and the transfer of title dated June 21, 2018 between Defendant MBFS and Defendant Lone Star on the face of the State of Florida title certificate are incomplete.

### *Defendant Lone Star Lists the Vehicle For Sale*

17. Defendant Lone Star advertised the Vehicle for sale on the internet through www.CommericalTruckTrader.com, including a photo of the driver's dashboard and the odometer showing 47,525 miles and a sales price of $35,000.00.

18. Plaintiff communicated with Defendant Lone Star about the Vehicle. Plaintiff told Defendant Lone Star's Joshua Hime that he was specifically in the market for a truck for his business.

19. Mr. James travelled from New Jersey to San Antonio, Texas to purchase the Vehicle.

20. According to the Retail Buyer's Order signed by Bradford James on behalf of Plaintiff BJ's and by Joshua Hime on behalf of Defendant Lone Star on May 3, 2019, the sales price of the Vehicle was $36,000.00. The Retail Buyer's Order also lists sales tax of $2,187.50, an emissions fee of $350.00, a license fee of $225.00, title application fee of $48.00, documentation fee of $50.00, and a vehicle inspection fee of $175.00 for a total selling price of $39,035.50. The Retail Buyer's Order reflects a down payment of $4,000.00 and a balance of $35,035.50.

21. Plaintiff secured financing for the balance through Defendant MBFS. Specifically, Plaintiff entered into a note and security agreement with Defendant MBFS for the amount of $35,035.50, with a daily simple interest rate of 9.99% per annum, and the loan to be paid in 48 monthly payments of $888.42, listing the Vehicle as collateral.

22. Before leaving Defendant Lone Star's dealership lot, Mr. James noticed a plastic cable was extending over the front of the driver's dash. Plaintiff asked Defendant about the plastic cable. In response, Mr. Hime explained the cable belonged to a microphone and offered to tuck it behind the odometer and speedometer cluster. Plaintiff waited while Defendant Lone Star made repairs to the driver's dash by concealing the plastic cable behind the dash.

23. Defendants did not disclose to Plaintiff any suspicions related to the Vehicle.

24. Defendants did not disclose to Plaintiff that the Vehicle's mileage may not be accurate.

25. Defendants did not disclose to Plaintiff that just eleven months prior to Plaintiff's purchase of the Vehicle, Defendants transferred title to the Vehicle with more than 98,630 additional miles on it.

26. Had Plaintiff BJ's, by and through its sole member, Mr. James known the Vehicle's mileage was inaccurate, he would not have even considered purchasing the Vehicle.

### *Intent to Defraud & Fraud*

27. Defendant MBFS signed the odometer disclosure on the Florida Title Certificate indicating 47,119 was the actual mileage of the Vehicle on the June 21, 2018, despite a listing of 146,155 actual miles as of April 19, 2018 *on the very same title certificate*.

28. Defendants knew that their certification of 47,119 actual miles for the transfer of title on June 21, 2018 was false.

29. On the Texas Department of Motor Vehicles' Dealer's Reassignment of Title for a Motor Vehicle form, Defendant Lone Star listed itself as the seller with a Dealer License Number of P1133245 and Plaintiff as the buyer.

30. In the odometer disclosure section of the title reassignment form, Defendant Lone Star certified,

> " I, the above listed seller, certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:  Odometer Reading (no tenths) 47525    Mileage Exceeds Mechanical Limits    Not Actual Mileage (WARNING – ODOMETER DISCREPANCY)"
> (Emphasis in original.)

31. Defendant Lone Star knew that its certification of 47,525 actual miles on May 3, 2019 for the Vehicle was false.

32. Defendants' false representations about the Vehicle's mileage were material to Plaintiff's decision to purchase the Vehicle.

33. Defendants intended for Plaintiff to rely on the representations they made in a manner reasonably contemplated to result in Plaintiff's decision to purchase the Vehicle.

34. Mr. James believed that Defendants' representations were true, and relied on the misrepresentations of Defendants to his detriment. Plaintiff was entitled to rely on the representations made by Defendants.

35. Plaintiff is now in a much worse position than it would have been had he not purchased the Vehicle from Defendants.

36. Plaintiff never would have purchased the Vehicle at any price if he had known that the odometer did not depict accurate mileage.

### *Plaintiff Discovers The True Mileage And Condition Of The Vehicle*

37. Plaintiff intended to drive the Vehicle from San Antonio, Texas to New Jersey immediately after purchasing it.

38. On or about Saturday, May 4, 2019, the Vehicle's dash was indicating orange and red system engine alerts.

39. Mr. James was very concerned that the Vehicle had broken down within such a short time. Plaintiff learned that the Vehicle had a transmission problem.

40. Defendant Lone Star claimed that whatever transmission repair needed to be made would be covered under the Mitsubishi warranty. When Plaintiff asked about payment for repairs,

Joshua Hime of Defendant Lone Star told him, "if it's not [covered under warranty], I will take care of it." Mr. Hime also offered to have the Vehicle delivered to Mr. James once the repairs were complete so that Mr. James could return to New Jersey as soon as possible.

41. During the time that the Vehicle was undergoing repairs, Plaintiff reviewed a Carfax report and discovered the Vehicle had an odometer reading of 146,155 dating back to April 19, 2018, over one year prior to Plaintiff's date of purchasing the Vehicle.

42. On behalf of Plaintiff, Mr. James also researched public records available through the State of Florida's Highway Safety and Motor Vehicles' website at https://services.flhsmv.gov/mvcheckweb/ where he discovered that the Vehicle's odometer had been recorded as 146,155 actual miles on April 19, 2018.

43. According to an AutoCheck Vehicle History Report that Mr. James requested, the Vehicle had an odometer reading of 146,155 dating back to April 19, 2018 listed as "ODOMETER READING FROM DMV," over one year prior to Plaintiff's date of purchasing the Vehicle.

44. Sometime in late May or June 2019, Plaintiff received the State of Florida certificate of title that shows both of the Defendants knew the Vehicle's odometer was previously listed at 146,155 actual miles as of April 19, 2018, as well as the Texas Dealer's Reassignment of Title for a Motor Vehicle certified by Defendant Lone Star's Joshua Hime.

45. Plaintiff has been unable to register the Vehicle out of concern for committing violations of federal or state odometer laws. As a result, the Vehicle remains in storage and fails to generate any productivity or income for Plaintiff.

V. CLAIM FOR RELIEF UNDER THE FEDERAL ODOMETER ACT

46. Plaintiff incorporates paragraphs 1-45 above.

47. At all times material hereto, the Vehicle was a "motor vehicle" as said term is defined under 49 U.S.C. § 32101(7).

48. For the reasons set forth above, Defendants violated the Federal Motor Vehicle Information and Cost Savings Act (hereinafter "Odometer Act") by failing to give accurate disclosures in transferring the Vehicle, in violation of 49 U.S.C. § 32701 *et. seq*.

49. Defendants had every ability to learn that the actual miles on the Vehicle were much higher than the stated odometer mileage.

50. Defendants violated the Odometer Act with knowledge and intent to defraud the Plaintiff.

51. As experienced motor vehicle dealers, Defendants knew or should have known of the Odometer Act and its regulatory requirements regarding disclosures, and Defendants deliberately and recklessly disregarded what the law required.

52. Defendants violated the Odometer Act with specific intent to defraud the Plaintiff, as Defendants knew that the lower mileage reading gave the Vehicle a higher value.

53. Specifically, Defendants gave "a false statement to the transferee [Plaintiff] in making the disclosure required by such a regulation [prescribed by 49 U.S.C. § 580.5]" in violation of 49 U.S.C. § 32705(a).

54. In violation of federal regulations prescribed by 49 U.S.C. § 580.5(c), Defendants failed to "disclose the mileage to the transferee [Plaintiff] in writing **on the title**." (Emphasis added).

55. In violation of federal regulations prescribed by 49 U.S.C. § 580.5(e), Defendants failed to certify "that the odometer reading does not reflect the actual mileage, and should not be

relied upon," and failed to include in their certification "warning notice to alert the transferee that a discrepancy exists between the odometer reading and the actual mileage."

56. Defendants failed to comply with written disclosure related to the Vehicle's odometer that "must be signed by the transferor [Defendants], including the printed name," in violation of federal regulations prescribed by 49 U.S.C. § 580.5(c).

57. Defendants failed to provide "[d]isclosure that the actual mileage [of the Vehicle] is unknown, if the transferor [Defendants know] that the odometer reading is different from the number of miles the vehicle has actually traveled" in violation of 49 U.S.C. § 32705(a)(1)(B).

58. As a direct and proximate result of the violations of the Odometer Act, Defendants are liable to Plaintiff in the sum of three times its actual damages or $10,000.00, whichever is greater under 49 U.S.C. § 32710(a).

59. Pursuant to 49 U.S.C. § 32710(b), Plaintiff is entitled to recover reasonable attorney fees and court costs upon entry of judgment in its favor.

## VI. TRIAL BY JURY

60. Plaintiff is entitled to and hereby demands a trial by jury.

## VII. PRAYER

WHEREFORE, Plaintiff respectfully prays for have judgment against each of the Defendants for the following:

a. The greater of statutory damages in the amount of $10,000.00 or treble actual damages or under 49 U.S.C. § 32710(a);

b. Attorney fees and costs 49 U.S.C. § 32710(b);

c. Prejudgment and post-judgment interest as allowed by law;

    d.       General relief; and

    e.       All other relief, in law and in equity, to which Plaintiff may be entitled.

                            Respectfully submitted,

                            <u>/s/ Dana Karni</u>
                            Dana Karni
                            **Karni Law Firm, P.C.**
                            Texas Bar # 24044379
                            4635 Southwest Freeway
                            Suite 645
                            Houston, Texas 77027
                            Tel:  713-552-0008
                            Fax:  713-454-7247
                            Dana@KarniLawFirm.com
                            Attorney for Plaintiff